IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.                                      CIV 06-0712 RB/KBM
                                      CR 03-1838 RB

RUPERT LENNON, JR.,

        Defendant-Movant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

The parties have completed briefing on Rupert Lennon's *pro se* "Motion For Recovery Of Seize[d] Property" brought under FED. R. CRIM. P. 41(g).[1] *See Docs. 1, 7, 8.*[2] I recommend that the motion be denied and this action dismissed with prejudice.

## I. Factual & Procedural Background

Defendant was a commercial truck driver who owned his own Florida-based business – Lennon & Sons Trucking, LCC, based in Tamarac, Florida. He was arrested at the Alamogordo border patrol checkpoint on June 24, 2003, after an agent discovered he was hauling hundreds of pounds of marijuana. *See, e.g., United States v. Lennon,* 155 Fed. Appx. 383, 384-85 (10th Cir. 2005), *cert. denied,* 126 S. Ct. 1480 (2006). The Drug Enforcement Administration ("DEA")

---

[1] Defendant brings this action under Rule 41(e), but the rule was amended and the return of property section now falls in subsection (g). *See, e.g, United States v. Rodriguez-Aguirre,* 414 F.3d 1177, 1179, n.1 (10th Cir. 2005) ("Effective December 1, 2002, Rule 41 was amended and reorganized. What was formerly Rule 41(e) is now found at Rule 41(g) with minor stylistic changes.").

[2] Unless otherwise noted, all citations to documents are those filed in this civil proceeding.

office in Las Cruces seized $1,352.00 from Defendant that day, and submitted it for administrative

forfeiture to the DEA Asset Forfeiture Section in Virginia.  *United States v. Lennon,* CR 03-1838

*(Doc. 69)*, Exh. 1 at ¶ 4(a) (hereinafter *"Hieronymus Affidavit"*).[3]

At his first appearance with the Federal Public Defender as counsel, Lennon gave his home

address as "5370 Gate Lake Road, Tamarac, FL  33319."  *United States v. Lennon,* CR 03-1838

*(Doc. 2)*.  He was released on bond July 3, 2003, and permitted to return to his residence with the

condition that he stay within the county of residence unless otherwise authorized by Pretrial

Services.  He signed the conditions of release form indicating the same address above.  A retained

attorney from Florida appeared with local counsel and represented him throughout the

proceedings through trial.  *See, e.g., id. (Docs. 6, 7, 8, 12, 15, 34)*.

Just one month later on August 5, 2003, the DEA sent notice of the seized money to

Lennon at his home address.  The notice explained how to respond to contest the proceedings.

*Hieronymus Affidavit,* ¶ 4(b) & Exh. 1.  On August 12, 2003, the printed name shows "Rupert

Lennon" signed a certified mail receipt for the notice, and the signature looks the same as the

signature he used to sign his conditions of release.  *See Hieronymus Affidavit,* ¶ 4(b) & Exh. 2;

*United States v. Lennon,* CR 03-1838 *(Doc. 7)* (available electronically in *United States v.*

*Lennon,* M 03-5281).  Nowhere in his motion or reply does Defendant claim that he did not

receive this notice of the administrative forfeiture proceedings.  *See Docs. 1, 8.*

The DEA also published notice in the Wall Street Journal on August 18, 24, and September

2, 2003.  *Hieronymus Affidavit,* ¶ 4(c) & Exhs. 3-5.  On September 17, 2003, a grand jury indicted

---

[3]  The United States did not file the attachments to the Hieronymus Affidavit as requested, to make
the filings in the criminal and civil record complete.  The United States did provide the Court with copies,
and I will attach both the affidavit and its exhibits to these proposed findings.

Lennon on the drug charge, and his local attorney entered a plea of not guilty at the arraignment. His bond was continued and Lennon continued to reside in Florida until his trial began. *See United States v. Lennon,* CR 03-1838 *(Docs. 17, 18, 21, 33, 34).* After his November 25, 2003 conviction, Lennon was allowed to remain on bond pending sentencing. *See id. (Docs. 34, 37).*

Those same conditions for release remained in effect even after his March 9, 2004 sentencing hearing. The day before Lennon was sentenced, the DEA sent a written notice addressed to Defendant's trucking company (which is not a claimant here) at Lennon's home address. *Hieronymus Affidavit,* ¶ 4(d) & Exh. 4. The printed name on a certified return receipt dated March 12, 2004 shows the name "Rupert Lennon," but the signature is illegible and does not clearly resemble the one Defendant used to sign his conditions of release. *See Hieronymus Affidavit,* ¶ 4(d) & Exh. 5; *United States v. Lennon,* CR 03-1838 *(Doc. 7)* (available electronically in *United States v. Lennon,* M 03-5281). However, Lennon does not contest that he received this notice as well while he was out on bond.

Lennon was later ordered to voluntarily surrender to the McRae Correctional Facility in Georgia on May 10, 2004. *United States v. Lennon,* CR 03-1838 *(Docs. 43-44, 45).* On June 27, 2004, District Judge Robert Brack denied Defendant's motion to continue on bond pending appeal to the Tenth Circuit, and the record is unclear when he surrendered to the facility. *See United States v. Lennon,* CR 03-1838 (Doc. 55); *see also Doc. 1* (caption shows Defendant is incarcerated at McRae). The Tenth Circuit affirmed the conviction and sentence on October 26, 2005, and the Supreme Court denied certiorari on March 6, 2006. *United States v. Lennon,* 155 Fed. Appx. 383, 384-85 (10th Cir. 2005), *cert. denied,* 126 S. Ct. 1480 (2006).

Because no claim had been received, the DEA administratively forfeited the cash on May 7,

2004. *Hieronymus Affidavit,* ¶ 4(e) & Exh. 6.   On May 3, 2006, Defendant filed this *pro se*

motion seeking to recover the forfeited money under Rule 41(e).

## II.  Analysis

Defendant challenges the basis for the forfeiture, arguing that the money was not "illegally

in the possession of the Defendant, nor were any of these items instrumentalities by which a crime.

(sic)  There was, in short, no legal basis, justification, or excuse for the seizure in question." *Doc.*

*1* at 2.  Even if that were true, this court has limited authority to review administrative forfeiture

proceedings.  Where, as here, Lennon failed to challenge the administrative forfeiture, a court may

not exercise jurisdiction under Rule 41 to entertain challenges to the merits of the underlying

forfeiture.  *E.g., United States v. Deninno,* 103 F.3d 82, 84 (10th Cir. 1996).

The Court does have federal question jurisdiction under 28 U.S.C. § 1331, however, to

consider any

> collateral due process attacks; that is, deciding whether the forfeiture
> offended due process rights.  . . .  If an administrative forfeiture does
> not have any procedural defects, other challenges to the forfeiture,
> which could have been addressed under the statutory and regulatory
> procedures, must be considered waived.

*Id.* at 84-85.  Due process in this context requires "'notice reasonably calculated, under all the

circumstances, to apprize interested parties of the pendency of the action and afford them an

opportunity to present their objections.'"  *Id.* (citation omitted).  Defendant does not dispute that

he received the notices that were sent and that the DEA further gave notification by publication in

a national newspaper.

Instead, Lennon contends the administrative proceedings were "procedurally irregular"

because the United States forfeited the property "while the underlying criminal conviction was still

ongoing." *Doc. 8* at 2.  He asserts that because he was not yet convicted when the money was

seized, the DEA did not "establish probable cause that the property seized 'facilitated' the

offense." *Id.* at 2.  As further evidence that there "was not substantial connection" between the

drug trafficking and the money, he points to the fact that his "semi trailer truck" was returned to

him after his conviction and sentence.  *Id.* at 3.

       These arguments should be rejected.  First, the factual basis underpinning Defendant's

theory for relief is inaccurate.  Lennon was convicted in November 2003, sentenced in March

2004, and the property was later forfeited in May 2004.  Thus, the money was not forfeited until

after the criminal proceedings concluded.  Second, a conviction was not a necessary predicate for

the DEA to seize the money:

> The test for determining probable cause for forfeiture purposes is the
> same as applies in arrests, searches and seizures.  Accordingly, the
> government must demonstrate a reasonable ground for belief of guilt
> supported by less than prima facie proof, but more than mere
> suspicion. . . .   Circumstantial evidence of drug transactions may
> support the establishment of probable cause.

*United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100*

*Dollars ($149,442.43) in U.S. Currency,* 965 F.3d 868, 876-77 (10th Cir. 1992) (internal citations,

footnote, and quotation omitted).  Third and foremost, the probable cause argument contests the

merits of the underlying forfeiture, any challenge to which  has been waived.

       Wherefore,


       **IT IS HEREBY RECOMMENDED** that this action for return of property be dismissed

with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____

UNITED STATES MAGISTRATE JUDGE